**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| JANE DOE, individually and on behalf of all similarly situated persons,<br><br>       Plaintiff,<br><br>v.<br><br>FLORIDA   HEALTH   SCIENCES CENTER, INC. D/B/A TAMPA GENERAL HOSPITAL, a Florida Non-Profit Corporation,<br><br>       Defendant. | **Civil Action No.:**<br><br>COMPLAINT<br><br>PROPOSED CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, Jane Doe, (hereinafter "Plaintiff"),[1] individually and on behalf of herself and all others similarly situated, upon personal knowledge of the facts pertaining to her and on information and belief as to all other matters, by and through her counsel, hereby brings this Class Action Complaint against Defendant, Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital (hereinafter "TGH").

## NATURE OF THE ACTION

1.      On May 12, 2023, TGH—one of the largest hospitals in the Tampa Bay Area and in the state of Florida—lost control over its patients' highly sensitive personal information in a data breach perpetrated by cybercriminals (the "Data Breach").

---

[1] Due to the sensitive nature of the information disclosed, as well as the discrete region in which this data breach occurred, the Plaintiff is using a pseudonym and will provide their identity to counsel for TGH upon the agreement of appropriate protective orders.

1

2.       The Data Breach exposed the protected health information belonging to what is estimated to be 1.2 million patients, including names, addresses, phone numbers, dates of birth, Social Security numbers, health information, medical records numbers, patient account numbers, dates of service, and limited treatment information (hereinafter "Personal Information") used by TGH for its business operations.[2] That exposure disturbs patients, as they no longer control their highly sensitive and confidential Personal Information, cannot stop others from viewing it, cannot prevent criminals from misusing it, and crucially cannot control where and to whom that Personal Information is sold and subsequently used.

3.       Worse, TGH only identified the intrusion after the damage was done. In its public notice, TGH "detected unusual activity" in its computer systems on May 31, 2023, but a subsequent investigation determined that the activity started earlier—TGH admits May 12, 2023. But the details of that investigation, like who performed it, how long it took, and what techniques were employed, are shrouded in secrecy.

4.       Thus, TGH exacerbated the harm its patients are suffering by failing to notify them about the Data Breach for *months*, meaning its patients had no reason to guard themselves against identity theft and fraud while criminals had their information and could misuse it. And there is evidence that those criminals did misuse that information during those intervening months.

5.       The resulting risks to those 1.2 million patients are neither remote nor

---

[2] Tampa General Hospital, *Cybersecurity Notice: Notice to Our Patients of Cybersecurity Event*, *available at* https://www.tgh.org/cybersecurity-notice (last accessed July 26, 2023).

speculative. Indeed, U.S. Senator Rick Scott (R-FL) wrote to the Federal Bureau of Investigations ("FBI") urging Director Wray to take immediate action and "prioritize the FBI's investigation" because "hackers were nonetheless ***able to access files containing sensitive personal identifying information that could be used for further criminal activity*** if the individuals are not quickly apprehended by [the FBI]."[3]

6.    But the TGH Data Breach should not have happened because it was preventable.

7.    As a medical provider, TGH knows it has heightened duties to safeguard its patients' Personal Information, affirming that "Tampa General Hospital considers the health, safety, and privacy of our patients and team members ***a top priority***."[4]

8.    Its patients, like Plaintiff, relied on TGH to fulfill its duties when there was an agreement to treat with TGH, which would not have occurred absent TGH's promise and commitment to protect their Personal Information.

9.    TGH's negligence is evidenced by its failure to prevent, detect, or stop the Data Breach before criminals gained access to its systems and stole the Personal Information belonging to approximately 1.2 million patients.

10.   And TGH exacerbated the harm its patients are suffering because it delayed notifying them about the Data Breach for months, depriving them of the earliest opportunity to mitigate the harm the Data Breach causes.

---

[3] Florida Daily, *Rick Scott Urges FBI to Investigate Cyberattack on Tampa General Hospital* (July 25, 2023) *available at* https://www.floridadaily.com/rick-scott-urges-fbi-to-investigate-cyberattack-on-tampa-general-hospital/
[4] *Supra,* FN. 2.

11.    TGH's misconduct violates state and federal law and industry standard data security policies.

12.    On information and belief, Plaintiff is a current and former TGH patient who disclosed her Personal Information to TGH to receive medical services.

13.    Plaintiff is a Data Breach victim, having received TGH's Data Breach notice.

14.    Since TGH's Data Breach, Plaintiff has suffered identity theft and fraud, harm they had no ability to mitigate due to TGH's delayed notice.

15.    Plaintiff brings this Class Action on behalf of herself and all others harmed by TGH's misconduct.

## PARTIES

16.    Plaintiff is a citizen of Florida and a resident of Tampa, Hillsborough County, FL. Plaintiff was a patient of Defendant at all times relevant hereto.

17.    Defendant TGH is a hospital with its principal place of business in Tampa, Hillsborough County, FL. It has more than $1 billion in assets.

## JURISDICTION AND VENUE

18.    The Defendant in this case has removed a number of similar class actions related to the TGH Data Breach asserting that the Court has jurisdiction under CAFA. Accordingly, upon information and belief, the Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000 exclusive of interest

4

and costs, there are more than 100 Class members, and at least one Class member is a citizen of a state different than Defendant.

19.     The Court has general personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

20.     The Court also has specific personal jurisdiction over Defendant because Defendant engaged in the conduct underlying this action in this District, including the collection, storage, and inadequate safeguarding of Plaintiffs' Personal Information.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial number of the events giving rise to this action occurred in this District. Defendant's principal place of business is in this District, and made its data security decisions leading to the Data Breach in this District.

## FACTUAL BACKGROUND

### A.     Appropriate Cybersecurity Measures are Crucial for Companies that Collect, Store, and Use Sensitive and Confidential Information

22.     As Senator Scott acknowledged, healthcare providers are at risk of data breaches. But not every healthcare provider succumbs to data breaches—only those that fail to devote adequate and appropriate resources to their cybersecurity hygiene.

23.     Industry leaders recognize that companies need to improve their defenses, particularly how sensitive and confidential information is stored. Rob Carey, former principal deputy chief information officer for the Department of Defense, acknowledged that in years past companies "would do what was necessary, but maybe

not sufficient" to protect consumers' data.[5] With the recent updates from the White House's cybersecurity strategy, Mr. Carey suggests that companies with "close[] the gap between necessary and sufficient levels of cyber defense and what is expected" to secure and protect consumers' sensitive and confidential information.[6] Indeed, "the cost of preparation and sort of defense is far less than cleaning up a cyber spill . . . or cyber attack."[7]

24.    A survey of 683 chief information officers and IT executives revealed that the mean IT budget devoted to cybersecurity was 15%, with nearly one quarter of organizations (23%) devoting 20% or more of their IT budget to security.[8] That same survey resulted in 40% of the respondents admitting that the need to increase cybersecurity protections was paramount to improving customer experience, growing the business, transforming existing business processes, and improving profitability.[9]

25.    It is undisputed that cybersecurity is crucial where consumers' sensitive and confidential information is stored by companies and organizations. However, despite the threat environment increasing, in 2023 IT and cybersecurity departments were the second most impacted by layoffs and cost cutting.[10]

___

[5] Lauren Williams, *Companies Prepare to Spend More on Cybersecurity Under New Rules*, Defense One (March 7, 2023) *available at* https://www.defenseone.com/defense-systems/2023/03/companies-prepare-spend-more-cybersecurity/383723
[6] *Id.*
[7] *Id.*
[8] Bob Violino, *How much should you spend on security?*, CSO Online (Aug. 20, 2019) *available at* https://www.csoonline.com/article/567633/how-much-should-you-spend-on-security.html
[9] *Id.*
[10] *Global Survey Reveals Cybersecurity Budgets Should be Spent on Security Operations in 2023*, Arctic Wolf (Jan. 23, 2023) *available at* https://arcticwolf.com/resources/blog/cybersecurity-budgets-spent-security-operations-2023

26.     A survey from 2022 revealed that only 17% of organizations polled had performed an audit of their cybersecurity vulnerabilities within the preceding 12 months; 17% of organizations had cybersecurity training for employees in the last 12 months; and just 34% had business continuity plans that covered cybersecurity.[11]

**B.    TGH Collects and Promises to Protect Patients' Personal Information**

27.     TGH is one of the largest hospitals in the Tampa Bay Area and Florida at large, licensed for 1,040 beds, with more than 8,000 team members, servicing a dozen Florida counties with a population in excess of 4 million individuals.

28.     To operate its business, TGH must create, collect, and store patients' Personal Information.

29.     As a result, TGH requires its patients to disclose their Personal Information to receive TGH's services, including their names, addresses, phone numbers, dates of birth, Social Security numbers, past health information, and other sensitive and confidential health information.

30.      In so doing, TGH promises those patients it will protect their information under state and federal law and its internal policies.

31.     In fact, TGH assures patients it is "committed to protecting the privacy and security of our patients' information." In other words, TGH recognizes it has

---

[11] Johnty Morgan, *How much should you be spending on your cybersecurity?*, Gallagher (April 6, 2022) *available at* https://www.ajg.com/uk/news-and-insights/2022/april/spending-on-your-cybersecurity

duties to safeguard patients' Personal Information. *See* TGH's Data Breach Notice ("Notice," attached as **Exhibit A**).

32.     However—as evidenced by its loss of control over patients' data—TGH never implemented the security safeguards sufficient to fulfill those duties, failing to adequately train its employees on data security, develop policies to prevent breaches, enforce those policies, follow industry standard guidelines on cybersecurity, and timely respond to data breaches and inform patients as required by law. As a result, TGH left patients' Personal Information a vulnerable target for theft and misuse.

**C.     TGH was on Actual Notice that its Cybersecurity Measures were Inadequate**

33.     This is not TGH's first data security incident. In May 2014, individuals wrongfully accessed and obtained patients' sensitive and confidential Personal Information, including names, addresses, dates of birth, Social Security numbers, admitting diagnoses, and insurers.

34.     Knowing that its systems lacked adequate and sufficient safeguards, TGH had actual knowledge that it needed to improve those safeguards and adequately and sufficiently protect patients' sensitive and confidential Personal Information.

**D.     TGH Violates Its Duties**

35.     On May 31, 2023, TGH discovered what it described as "unusual activity" on its network.

36.     That "activity" was a data breach by cybercriminals, who bypassed TGH's inadequate and insufficient security and infiltrated its systems.

37.    Once inside, hackers could access patients' Personal Information, including their names, addresses, phone numbers, dates of birth, Social Security numbers, health information, medical records numbers, patient account numbers, dates of service, and limited treatment information.

38.    In response, TGH represented that it "immediately took steps to contain the activity and began an investigation with the assistance of a third-party forensic firm."[12] Unfortunately, TGH was unable to prevent access to and the exfiltration of that data by unknown third parties.

39.    TGH took approximately two months to announce the data breach, and upon information and belief, has only just begun notifying individuals whose Personal Information was implicated in the data breach.

40.    During that time, TGH did not warn patients that it lost control over their data, meaning they had no reason to guard themselves against identity theft and fraud. This also meant that patients continued to treat with TGH, providing their Personal Information to an unsecure healthcare provider and TGH continued to collect revenue associated with that ongoing treatment.

41.    TGH recognized the threat its Data Breach posed to its patients. Indeed, in its publicized notice, TGH encouraged patients "to review statements from their health insurer and healthcare providers, and to contact them immediately if they see any services they did not receive."[13] In letters sent to patients impacted by the Data

---

[12] *Supra*, FN. 2.
[13] *Supra,* FN. 2.

Breach, TGH advised patients to review statements that they receive from their health insurers, and only provided a small window (until October 2023) to elect any monitoring services that TGH offered.

42.     In other words, TGH encouraged its patients to spend time and resources mitigating the harm resulting from the Data Breach—after TGH failed to devote adequate and sufficient safeguards to protect that Personal Information in the first place.

### E.     Plaintiff's Experience

43.     Jane Doe was a patient of TGH.

44.     Jane Doe is also a victim of the Data Breach, having received TGH's Notice.

45.     Jane Doe provided her Personal Information to her physician and trusted that her physician would use reasonable measures to protect it. Accordingly, Jane Doe expected that Personal Information would be protected according to state and federal law and any applicable internal policies at TGH.

46.     Since the Data Breach, Jane Doe has suffered identity theft in the form of fraudulent loan and credit card applications that she has never applied for.

47.     To deal with this identity theft, Jane Doe has devoted hours to remediating it and mitigating the potential for it to happen again.

48.     Indeed, Jane Doe has and will spend considerable time and effort monitoring her accounts to protect herself from identity theft. Jane Doe fears for her personal financial security and uncertainty over what Personal Information was

exposed in the Data Breach.

49.     Jane Doe has and is experiencing feelings of anxiety, stress, sleep disruption, fear, and frustration because of the Data Breach. The fear stems from the fact that her highly sensitive Personal Information is in criminal hands, who have already shown they will misuse that information. These emotional harms go far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

50.     Jane Doe anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. In addition, Jane Doe will continue to be at present, imminent, and continued increased risk of identity theft and fraud for years to come.

51.     Jane Doe suffers a present injury from the increased risk of fraud, identity theft, and misuse resulting from her Personal Information being placed in the hands of criminals. Jane Doe has a continuing interest in ensuring that her Personal Information, which is the type that cannot be changed and upon information and belief remains in TGH's possession, is protected and safeguarded from future breaches.

52.     TGH has not represented the business practices changes that have been implemented to prevent against further data breaches—even at a high level that would not jeopardize its security infrastructure.

**F.    Plaintiff and the Class Face Significant Risk of Continued Identity Theft**

53.     Plaintiff and Class Members have suffered injury from the misuse of their Personal Information that can be directly traced to TGH.

11

54.     As a result of TGH's failure to prevent the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a.     The loss of the opportunity to control how her Personal Information is used;

b.     The compromise and continuing publication of her Personal Information;

c.     Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

d.     Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

e.     Delay in receipt of tax refund monies;

f.     Unauthorized use of stolen Personal Information; and

g.     The continued increased risk to her Personal Information, which remains in the possession of TGH and is subject to further breaches so long as TGH fails to undertake the appropriate measures to protect the Personal Information in her possession.

55.     Stolen Personal Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen Personal Information can be worth up to $1,000.00 depending on the type of information obtained. Thus, criminals willingly pay money for access to Personal Information, which enables those criminals to commit fraud and identity theft to the detriment of patients and consumers, including Plaintiff and members of the Class.

56.     The value of Plaintiff's and Class Members' Personal Information on the black market is considerable. Stolen Personal Information trades on the black market

for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

57.    It can take victims years to spot identity or Personal Information theft, giving criminals plenty of time to use that information for cash.

58.    One such example of criminals using Personal Information for profit is the development of "Fullz" packages.

59.    Cyber-criminals can cross-reference two sources of Personal Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

60.    The development of "Fullz" packages means that stolen Personal Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' names, addresses, phone numbers, dates of birth, Social Security numbers, health information, medical records numbers, patient account numbers, dates of service, and limited treatment information, and other sources and identifiers. In other words, even if certain types of information may not be included in the Personal Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and Class Members' stolen Personal

Information are being misused, and that such misuse is fairly traceable to the Data Breach.

61.     TGH disclosed the Personal Information of Plaintiff and Class Members to unauthorized third parties to use in the conduct of criminal activity. Specifically, TGH exposed the Personal Information of the Plaintiff and Class Members to people engaged in disruptive and unlawful business practices and tactics.

62.     TGH's failure to properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff's and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their Personal Information and take other necessary steps to mitigate the harm caused by the Data Breach.

63.     Had TGH timely and properly notified Plaintiff and Class Members of the Data Breach, Plaintiff and Class Members could have taken proactive, rather than reactive, mitigating measures. Plaintiff, had they received timely notice, could have placed a freeze on her credit and taken other precautions, which would mitigate exposure to criminal activity.

**G.    TGH failed to adhere to FTC guidelines.**

64.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as TGH, should employ to protect against the unlawful exposure of Personal Information.

65.     In 2016, the FTC updated its publication, Protecting Personal

14

Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

        a.     protect the personal customer information that they keep;
        b.     properly dispose of personal information that is no longer needed;
        c.     encrypt information stored on computer networks;
        d.     understand their network's vulnerabilities; and
        e.     implement policies to correct security problems.

66.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

67.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

68.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

69.     TGH's failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' (*i.e.*, consumers') Personal Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

## H.     TGH Failed to Adhere to HIPAA

70.     HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[14]

71.     HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PHI is properly maintained.[15]

72.     The Data Breach itself resulted from a combination of inadequacies showing TGH failed to comply with safeguards mandated by HIPAA. TGH's security failures include, but are not limited to:

> a.     Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

---

[14] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[15] *See* 45 C.F.R. § 164.306 (Security standards and General rules); 45 C.F.R. § 164.308 (Administrative safeguards); 45 C.F.R. § 164.310 (Physical safeguards); 45 C.F.R. § 164.312 (Technical safeguards).

b.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c.  Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.  Failing to ensure compliance with HIPAA security standards by TGH workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.  Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.  Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.  Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.  Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

## **CLASS REPRESENTATION ALLEGATIONS**

73.  Plaintiff brings this suit on behalf of herself and a class of similarly situated individuals preliminarily defined as:

> All persons impacted by the Data Breach, including all who were sent a notice of the Data Breach. Excluded from the class are all employees, officers, and directors of Defendant, as well as any judges presiding over this matter and court personal assigned to this case.

17

74. **Numerosity**: The Class Members are so numerous that joinder of all members is impracticable. The exact number and identities of Class Members are unknown at this time, but are reported to be at least the 1.2 million to whom TGH sent the Notice. The identities of Class Members are ascertainable through TGH's records, Class Members' records, publication notice, self-identification, and other means.

75. **Commonality:** Common questions of law and fact exist as to all Class Members. These common questions of law or fact predominate over any questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

a.    Whether TGH violated state and federal laws by failing to properly store, secure, and dispose of Plaintiff's and Class Members' Personal Information;

b.    Whether TGH failed to employ reasonable and adequate data and cybersecurity measures in compliance with applicable state and federal regulations;

c.    Whether TGH acted willfully, recklessly, or negligently with regard to securing Plaintiff's and Class Members' Personal Information;

d.    How the Data Breach occurred;

e.    Whether TGH failed to timely notify Plaintiff and Class Members of the Data Breach;

f.    Whether Plaintiff and Class Members are entitled to restitution, damages, compensation, or other monetary relief; and

g.    Whether Plaintiff and Class Members are entitled to injunctive and declaratory relief necessary to secure their Personal Information from further intrusion, exposure, and misuse.

76. Common sources of evidence may also be used to demonstrate TGH's unlawful conduct on a class-wide basis, including, but not limited to, documents and testimony about its data and cybersecurity measures (or lack thereof); testing and other

methods that can prove TGH's data and cybersecurity systems have been or remain inadequate; documents and testimony about the source, cause, and extent of the Data Breach; and documents and testimony about any remedial efforts undertaken as a result of the Data Breach.

77.    **Typicality:** Plaintiff's claims are typical of the claims of the respective Class they seek to represent, in that the named Plaintiff and all Class Members have suffered similar injuries as a result of the same practices alleged herein. Plaintiff has no interests adverse to the interests of the other members of the Class.

78.    **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Class and has retained attorneys well experienced in class actions and complex litigation as her counsel, including cases alleging consumer protection and data privacy claims arising from medical data breaches.

79.    **Superiority and Predominance:** Among other things, Plaintiff avers that the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for TGH; that the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede her ability to protect her interests; that TGH has acted or refused to act on grounds that apply generally to the Class, thereby making final injunctive relief or declaratory relief described herein appropriate with respect to the Class as a whole; that questions of law

or fact common to the Class predominate over any questions affecting only individual members and that class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy which is the subject of this action. Plaintiff further states that the interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and that the management of the Class will not be difficult.

80.    Plaintiff and Class Members have suffered injury, harm, and damages as a result of TGH's unlawful and wrongful conduct. Absent a class action, TGH will continue to maintain Plaintiff's and Class Members' Personal Information that could be subject to future breaches due to lax or non-existent cybersecurity measures, and such unlawful and improper conduct should not go unchecked nor remedied. Absent a class action, the Class Members will not be able to effectively litigate these claims and will suffer further harm and losses, as TGH will be allowed to continue such conduct with impunity and benefit from its unlawful conduct.

## CLAIMS FOR RELIEF

### COUNT I
**Violation of Florida Deceptive and Unfair Trade
Practices Act, Fla. Stat. §§ 501.201, et seq.
On behalf of Plaintiff and the Class**

81.    Plaintiff realleges paragraphs 1 through 80 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

82.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Fla. Stat. §§ 501.201, et seq. The express

purpose of FDUPTA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

83.    TGH's sale of goods and provision of medical services for monetary compensation at issue in this cause are "consumer transaction[s]" within the scope of FDUTPA. Fla. Stat. §§ 501.201-501.213. Plaintiffs are "consumer[s]" as defined by FDUTPA. Fla. Stat. § 501.203. TGH is engaged in trade or commerce within the meaning of FDUTPA.

84.    FDUTPA declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

85.    FDUPTA provides that "due consideration be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Trade Commission Act." Fla. Stat. § 501.204(2). TGH's unfair and deceptive practices are likely to mislead—and have misled—the consumer acting reasonably under the circumstances. Fla. Stat. § 500.04; 21 U.S.C. § 343. As set forth above, TGH's Data Breach was a result of its substandard (if not wholly inadequate) data and cybersecurity practices in violation of the state and federal requirements as set forth above.

86.    Pursuant to the FCRA, HIPAA (42 U.S.C. § 1302d et seq.), the FTCA, and Florida law (Fla. Stat. § 456.057 and § 501.171), TGH was required by law to maintain adequate and reasonable data and cybersecurity measures to maintain the

security and privacy of Plaintiff's and Class Members' Personal Information. TGH was also under an obligation expressly under Florida law, where TGH is headquartered and managed, to adequately protect Plaintiff's and Class Members' Personal Information. Among other things, Florida requires TGH to (1) take reasonable measures to protect and secure data in electronic form containing PII; (2) take reasonable measures to dispose of or destroy PII; and (3) provide notice to consumers and consumer reporting agencies subject to the FCRA when a data security incident occurs that compromises PII. Fla. Stat. §§ 501.171.

87.     TGH has violated FDUPTA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers. At all times material herein, TGH has failed to maintain adequate and reasonable data and cybersecurity protocols for Plaintiff's and Class Members' Personal Information in violation of state and federal laws and its own privacy practices and policies. TGH has also failed to take reasonable measures to destroy or dispose of Personal Information and timely notify its patients of the Data Breach in violation of Florida law.

88.     Plaintiff has standing to pursue this claim because they have been injured by virtue of suffering a loss of privacy, money and/or property as a result of the wrongful conduct alleged herein. Plaintiff would not have purchased TGH's goods and services (or paid as much) had they known the truth about TGH's substandard and shoddy data and cybersecurity measures. Moreover, TGH will continue to maintain Plaintiff's and Class Members' Personal Information for the indefinite future,

giving them a strong interest in ensuring such data is protected with state of the art, industry standards to prevent future data breaches. This is as true for current patients, former patients, and those whose Personal Information may have been obtained from other physicians where the patient never had a relationship with TGH. As a direct result of TGH's actions and omissions of material facts, Plaintiff and Class Members did not obtain the value of the goods and services for which they paid; were induced to pay for (or pay more for) medical goods and services that they otherwise would not have; and lost their ability to make informed and reasoned decisions about their medical treatment.

89.    The damages suffered by Plaintiff and Class Members were directly and proximately caused by the deceptive, misleading and unfair practices of TGH, as described above.

90.    Plaintiff and Class Members seek declaratory judgment that TGH's data security practices were not reasonable or adequate and caused the Data Breach under FDUTPA, as well as injunctive relief enjoining the above described wrongful acts and practices of TGH and requiring TGH to employ and maintain industry accepted standards for data management and security, including, but not limited to, proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing. Fla. Stat. § 501.211(1).

91.    Additionally, Plaintiff and Class Members make claims for actual damages, attorneys' fees and costs. Fla. Stat. §§ 501.2105, 501.211(2).

## COUNT II
### Negligence
### On behalf of Plaintiff and the Class

92.     Plaintiff realleges paragraphs 1 through 80 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

93.     TGH had a duty to exercise reasonable care and protect and secure Plaintiff's and Class Members' Personal Information. This duty exists at common law and is also codified under Federal law (*see*, *e.g.*, FTCA, FCRA, and HIPAA) and Florida law (*see*, *e.g.*, Fla. Stat. §§ 456.057, 501.171).

94.     Through its acts and omissions, TGH breached its duty to use reasonable care to protect and secure Plaintiff's and Class Members' Personal Information by employing substandard or non-existent data and cybersecurity protocols.

95.     TGH further breached its duties by failing to employ industry standard data and cybersecurity measures to gain compliance with those laws, including, but not limited to, proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

96.     It was reasonably foreseeable, particularly given legal mandates governing health data protection and the growing number of data breaches of health information—including past data breaches at TGH—that the failure to reasonably protect and secure Plaintiff's and Class Members' Personal Information would result in an unauthorized third-party again gaining access to TGH's networks, databases, and computers that stored or contained Plaintiff's and Class Members' Personal Information.

97.    Plaintiff's and Class Members' Personal Information constitutes personal property that was stolen due to TGH's negligence, resulting in harm, injury and damages to Plaintiff and Class Members.

98.    TGH's negligence directly and proximately caused the unauthorized access and disclosure of Plaintiff's and Class Members' unencrypted Personal Information and Plaintiff and Class Members have suffered and will continue to suffer damages as a result of TGH's conduct. Plaintiff and Class Members seek damages and other relief as a result of TGH's negligence.

**COUNT III**
**Breach of Express Contract**
**On behalf of Plaintiff and the Class**

99.    Plaintiff realleges paragraphs 1 through 80 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

100.    TGH provides medical services to Plaintiff and Class Members pursuant to the terms of its contracts, which all were a party to, including agreements regarding the handling of their confidential Personal Information in accordance with TGH's policies, practices, and applicable law. Plaintiff is not in possession of these contracts but upon information and belief these contracts are in the possession of TGH. As consideration, Plaintiff and Class Members paid money to TGH and/or their insurers for medical services. Accordingly, Plaintiff and Class Members paid TGH to securely maintain and store their Personal Information. TGH violated these contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class

Members' Personal Information and by disclosing it for purposes not required or permitted under the contracts.

101. Plaintiff and Class Members have been damaged by TGH's conduct, including by paying for data and cybersecurity protection that they did not receive, as well as by incurring the harms and injuries arising from the Data Breach now and in the future.

## COUNT IV
## Breach of Implied Contract In Fact
## On behalf of Plaintiff and the Class

102. Plaintiff realleges paragraphs 1 through 80 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above. This Count is plead in the alternative to Count III (express contract).

103. TGH provides medical services to Plaintiff and Class Members also formed an implied contract with TGH regarding the provision of those services through their collective conduct, including by Plaintiff and Class Members paying for medical goods and services from TGH and by TGH's performance of and sale of medical goods and services, regarding the handling of their confidential Personal Information in accordance with TGH's policies, practices, and applicable law.

104. As consideration, Plaintiff and Class Members paid money to TGH and/or their insurers for medical services. Accordingly, Plaintiff and Class Members paid TGH to securely maintain and store their Personal Information. TGH violated these contracts by failing to employ reasonable and adequate security measures to

secure Plaintiff's and Class Members' Personal Information and by disclosing it for purposes not required or permitted under the contracts or agreements.

105.    Plaintiff and Class Members have been damaged by TGH's conduct, including by paying for data and cybersecurity protection that they did not receive, as well as by incurring the harms and injuries arising from the Data Breach now and in the future.

## COUNT V
### Invasion of Privacy (Electronic Intrusion)
### On behalf of Plaintiff and the Class

106.    Plaintiff realleges paragraphs 1 through 80 as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

107.    Plaintiff and Class Members maintain a privacy interest in their Personal Information, which is private, confidential information that is also protected from disclosure by applicable laws set forth above. Plaintiff's and Class Members' Personal Information was contained, stored, and managed electronically in TGH's records, computers, and databases that was intended to be secured from unauthorized access to third-parties because it contained highly sensitive, confidential matters regarding Plaintiff's and Class Members' identities, unique identification numbers, medical histories, and financial records that were only shared with TGH for the limited purpose of obtaining and paying for healthcare, medical goods and services. Additionally, Plaintiff's and Class Members' Personal Information, when contained in electronic form, is highly attractive to criminals who can nefariously use their Personal

27

Information for fraud, identity theft, and other crimes without their knowledge and consent.

108. TGH's disclosure of Plaintiff's and Class Members' Personal Information to unauthorized third-parties as a result of its failure to adequately secure and safeguard their Personal Information is offensive to a reasonable person. TGH's disclosure of Plaintiff's and Class Members' Personal Information to unauthorized third-parties permitted the physical and electronic intrusion into Plaintiff's and Class Members' private quarters where their Personal Information was stored and disclosed private facts about their health into the public domain.

109. Plaintiff and Class Members have been damaged by TGH's conduct, including by paying for data and cybersecurity protection that they did not receive, as well as by incurring the harms and injuries arising from the Data Breach now and in the future.

**COUNT VI**
**Unjust Enrichment**
**On behalf of Plaintiff and the Class**

110. Plaintiff realleges paragraphs 1 through 80 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

111. Plaintiff and Class Members conferred a benefit on TGH by paying for data and cybersecurity procedures to protect their Personal Information that they did not receive.

112. This conferral of benefit was not incidental to Plaintiff's and Class Members' treatment—Plaintiff and Class Members expected that TGH would ensure

that their Personal Information would remain secure and not be disclosed to unauthorized third parties by, *inter alia*, devoting appropriate and sufficient budgets to secure and protect that Personal Information.

113.    TGH has retained the benefits of its unlawful conduct including the amounts received for data and cybersecurity practices that it did not provide. Due to TGH's conduct alleged herein, it would be unjust and inequitable under the circumstances for TGH to be permitted to retain the benefit of its wrongful conduct.

114.    Plaintiff and the Class Members are entitled to full refunds, restitution and/or damages from TGH and/or an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by TGH from its wrongful conduct. If necessary, the establishment of a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation may be created.

115.    Additionally, Plaintiff and the Class Members may not have an adequate remedy at law against TGH, and accordingly plead this claim for unjust enrichment in addition to or, in the alternative to, other claims pleaded herein.

## COUNT VII
### Breach of Confidence
### On behalf of Plaintiff and the Class

116.    Plaintiff realleges paragraphs 1 through 80 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

117.    At all times during Plaintiff's and Class Members' relationship with TGH, TGH was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' Personal Information.

118.   As alleged herein and above, TGH's relationship with Plaintiff and Class Members was governed by terms and expectations that Plaintiff's and Class Members' Personal Information would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

119.   Plaintiff and Class Members provided their Personal Information to TGH with the explicit and implicit understandings that TGH would protect and not permit Personal Information to be disseminated to any unauthorized parties.

120.   Plaintiff and Class Members also provided their Personal Information to TGH with the explicit and implicit understandings that TGH would take precautions to protect such Personal Information from unauthorized disclosure.

121.   TGH voluntarily received in confidence Plaintiff's and Class Members' Personal Information with the understanding that the Personal Information would not be disclosed or disseminated to the public or any unauthorized third parties.

122.   Due to TGH's failure to prevent, detect, or avoid the Data Breach from occurring by, *inter alia*, following industry standard information security practices to secure Plaintiff's and Class Members' Personal Information, Plaintiff's and Class Members' Personal Information was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

123.   As a direct and proximate cause of TGH's actions and/or omissions, Plaintiff and Class Members have suffered damages.

124.    But for TGH's disclosure of Plaintiff's and Class Members' Personal Information in violation of the parties' understanding of confidence, their protected Personal Information would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. TGH's Data Breach was the direct and legal cause of the theft of Plaintiff's and Class Members' protected Personal Information, as well as the resulting damages.

125.    The injury and harm Plaintiff and Class Members suffered was the reasonably foreseeable result of TGH's unauthorized disclosure of Plaintiff's and Class Members' Personal Information.

126.    As a direct and proximate result of TGH's breaches of confidence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Personal Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Personal Information; (iv) lost opportunity costs associated with effort expended to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from medical fraud, financial fraud, and identity theft; (v) costs associated with placing freezes on credit reports; (vi) the continued risk to their Personal Information, which remain in TGH's possession and is subject to further unauthorized disclosures so long as TGH fails to undertake appropriate and adequate measures to protect the Personal Information of patients in its continued possession; and (vii) future costs in terms of

time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

127.    As a direct and proximate result of TGH's breaches of confidence, Plaintiff and Class Members have suffered and will continue to suffer injury and/or harm.

## COUNT VIII
### Breach of Fiduciary Duty
### On behalf of Plaintiff and the Class

128.    Plaintiff realleges paragraphs 1 through 80 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

129.    In light of their special relationship, TGH has become the guardian of Plaintiff's and Class Members' Personal Information. TGH has become a fiduciary, created by its undertaking and guardianship of patient Personal Information, to act primarily for the benefit of their patients, including Plaintiff and Class Members. This duty included the obligation to safeguard Plaintiff's and Class Members' Personal Information and to timely notify them in the event of a data breach.

130.    TGH has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship. TGH has breached its fiduciary duties owed to Plaintiff and Class Members by failing to:

    a.    properly encrypt and otherwise protect the integrity of the system containing Plaintiff's and Class Members' protected health information and other Personal Information;

    b.    timely notify and/or warn Plaintiff and Class Members of the Data Breach.

c.   ensure the confidentiality and integrity of electronic protected health information TGH created, received, maintained, and transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d.   implement technical policies and procedures to limit access to only those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

e.   implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1);

f.   to identify and respond to suspected or known security incidents; mitigate to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

g.   to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R. § 164.306(a)(2);

h.   to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

i.   ensure compliance with the HIPAA security standard rules by their workforce in violation of 45 C.F.R. § 164.306(a)(94);

j.   improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 C.F.R. § 164.502, et seq.;

k.   effectively train all members of their workforce (including independent contractors) on the policies and procedures with respect to protected health information as necessary and appropriate for the members of their workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5)

l.   design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, in compliance with 45 C.F.R. § 164.530©; and

m.    otherwise failing to safeguard Plaintiff's and Class Members' Personal Information.

131.   As a direct and proximate result of TGH's breaches of its fiduciary duties,

Plaintiff and Class Members have suffered and will suffer injury, including, but not

limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Personal Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Personal Information; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Personal Information, which remains in TGH's possession and is subject to further unauthorized disclosures so long as TGH fails to undertake appropriate and adequate measures to protect patient Personal Information in their continued possession; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

132.    As a direct and proximate result of TGH's breach of its fiduciary duty, Plaintiff and Class Members have suffered and will continue to suffer injury and/or harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on her own and behalf of all others similarly situated, pray for relief as follows:

A.    For an Order certifying this case as a class action, appointing Plaintiff as a Class Representative, and the undersigned as Class Counsel;

B.     Awarding monetary and actual damages and/or restitution, as appropriate, or nominal damages in the alternative;

C.     Awarding declaratory and injunctive relief as permitted by law or equity to assure that the Class has an effective remedy, including enjoining TGH from continuing the unlawful practices as set forth above;

D.     Awarding pre- and post-judgment interest to the extent allowed by the law;

E.     Awarding all costs, experts' fees and attorneys' fees, expenses and costs of prosecuting this action; and

F.     Such other and further relief as the Court may deem just and proper.

DATED:      September 13, 2023

Respectfully Submitted,

*/s/ Ryan J. McGee*
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
Ryan J. McGee, Esq. (FBN 064957)
RMcGee@ForThePeople.com
John A. Yanchunis, Esq. (FBN 324681)
JYanchunis@ForThePeople.com
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4702

Karen Hanson Riebel (*pro hac vice* forthcoming)
Kate M. Baxter-Kauf (*pro hac vice* forthcoming)
Eura Chang (*pro hac vice* forthcoming)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900

Facsimile: (612) 339-0981
kmbaxter-kauf@locklaw.com
khriebel@locklaw.com

*Attorneys for* Plaintiff